IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAM LAUER, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) No. 25 C 02438 ) |
| v. | ) Judge John J. Tharp, Jr. ) ) |
| JOHN PAUL MITCHELL SYSTEMS, | ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

For the reasons set forth below, JPMS's motion to dismiss [36] is granted in part and denied in part. The motion to stay discovery pending ruling on that motion [38] is denied as moot. Lauer is granted leave to amend, consistent with this opinion, by January 9, 2026.

**I.      BACKGROUND**

John Paul Mitchell Systems ("JPMS") is a California corporation that sells hair care products throughout the United States. Many of its products are labeled and advertised as "Made in the USA" without qualification. Per federal regulations, products may only be labeled as such if "all or virtually all ingredients or components of the product are made and sourced in the United States." 16 C.F.R. § 323.2 (2025). Otherwise, the use of a "Made in the USA" label constitutes an unfair or deceptive practice under the Federal Trade Commission Act. *Id.*

Between August 2024 and February 2025, plaintiff Sam Lauer purchased six products from the JPMS Tea Tree line that featured unqualified "Made in the USA" labels.[1] He states that he

---

[1] Specifically, Lauer purchased the Tea Tree Lavender Mint Moisturizing Shampoo, the Tee Tree Lavender Mint Moisturizing Conditioner, the Tea Tree Lemon Sage Thickening Shampoo, the Tea Tree Lemon Sage Thickening Conditioner, the Tea Tree Lemon Special

"read, believed, and relied upon" the labels and that he "would not have purchased the Products but for the unqualified 'Made in the USA' claim." SAC ¶¶ 66, 81. Lauer subsequently learned that the products contained what he believes to be foreign-sourced ingredients. Specifically, he asserts that tree oil—"the namesake and key ingredient" of the Tea Tree line—is endemic to Australia, and that jojoba seeds, which are used in some Tea Tree products, "are not produced in commercial quantities in the United States." *Id.* ¶¶ 50 & n. 9, 51 & n. 10.

Lauer's qualms are not limited to the six products he purchased. He claims that JPMS labels over 200 additional products (the "Class Products") as "Made in the USA" despite the fact that they contain various foreign-sourced ingredients. *See* SAC Ex. A., ECF No. 32-1; SAC ¶¶ 51-56. According to Lauer, JPMS does so in order to "charge[] a premium" and "gain[] a competitive advantage" in the haircare market, leveraging the widespread consumer preference for American-made products. SAC ¶¶ 63-65.

In July 2025, Lauer filed this class complaint ("the Complaint") purporting to represent "all persons in Illinois who purchased one or more of the Class Products labeled 'Made in the USA' or any derivative thereof on the product, packaging or product description, and that were made with or contained ingredients or components not grown or manufactured in the USA, within four years prior to the filing of this Complaint." *Id.* ¶ 97.[2] The Complaint seeks to hold JPMS liable

---

Invigorating Conditioner, and the Tea Tree Grooming Pomade. *See* Second Am. Compl. ("SAC") ¶¶ 70-72, ECF No. 32.

[2] The original complaint in this case was filed in March 2025 and was amended once as a matter of course. *See* First Am. Compl., ECF No. 5. That complaint included a California plaintiff who sought to represent a California class alongside Lauer's Illinois class. *Id.* ¶ 105. JPMS moved to dismiss, asserting (among other things) lack of personal jurisdiction over the California claims. *See* Mot. to Dismiss First Am. Compl., ECF No. 24. In response, Lauer amended the complaint, dropping the California plaintiff. *See* SAC. This Second Amended Complaint is the operative

on the basis of five theories: first, for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA); second, for violations of the Illinois Uniform Deceptive Trade Practices Act (UDTPA); and third, fourth, and fifth, for the common law torts of unjust enrichment, negligent misrepresentation, and intentional misrepresentation. Lauer seeks damages and injunctive relief as remedies.

JPMS moves to dismiss the Complaint on several grounds. As a threshold matter, it argues that Lauer lacks Article III standing to raise claims related to the over two-hundred Class Products he did not purchase and that this Court lacks personal jurisdiction over the defendant with respect to those claims. JPMS also argues that Lauer lacks Article III standing to seek injunctive relief and that he has failed to state any claim under Illinois law.³

This Court concludes that Article III does not bar Lauer from raising claims related to products he did not personally purchase as putative class representative. However, it also finds that he fails to meet the pleading requirements of Federal Rule of Procedure 9(b) in several respects. Lauer is granted leave to amend to address those deficiencies by January 9, 2026. As for remedies, the Court finds that Lauer lacks Article III standing to seek injunctive relief.

---

complaint, which JPMS moves to dismiss. *See* Mot. to Dismiss Second Am. Compl. ("Mot."), ECF No. 37.

³ JPMS advocates dismissal of the negligent misrepresentation claim in particular because Illinois law bars such claims where, as here, damages are purely economic. Mot. 12 (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2nd 443 (Ill. 1982)). Lauer does not address this argument in his response. Accordingly, this Court finds that Lauer has waived the argument and dismisses that claim with prejudice. *See Williams v. REP Corp.*, 302 F.3d 660, 667 (7th Cir. 2002) (holding that a party's failure to address an issue in its reply brief constitutes waiver).

## II. DISCUSSION

### A. Standing

Because subject matter jurisdiction goes to the heart of a court's ability to adjudicate a dispute, this Court begins by considering JPMS's Article III challenges. In the face of a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014). When determining whether a plaintiff has done so, courts must "accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

#### 1. Unpurchased Products

JPMS argues that Lauer lacks Article III standing to raise claims regarding the Class Products he did not personally purchase. As the parties recognize, courts in this district have not adopted a uniform approach to this issue. Some courts hold that class representatives always lack Article III standing to assert claims related to products they did not buy. *See, e.g.*, *Raya v. Mead Johnson Nutrition Co.*, 758 F. Supp. 3d 819, 829 (N.D. Ill. 2024); *Gibson v. Albertsons Companies, Inc.*, No. 22 CV 642, 754 F.Supp.3d 793, 803, (N.D. Ill. Oct. 17, 2024). Others hold that Article III standing exists so long as the unpurchased products are "substantially similar" to the products purchased by the class representative. *See, e.g.*, *Daly v. FitLife Brands, Inc.*, No. 22 C 00762, 2023 WL 6388112, at *6 (N.D. Ill. Sept. 29, 2023); *Ulrich v. Probalance, Inc.*, No. 16 C 10488, 2017 WL 3581183, at *6 (N.D. Ill. Aug. 18, 2017). A final group postpones the question until class certification, contending that the issue is not one of standing but of typicality or adequacy under Federal Rule of Procedure 23. *See, e.g.*, *Thomas v. Walmart Inc.*, 720 F. Supp. 3d 650, 658 (N.D.

4

Ill. 2024); *Garland v. Children's Place, Inc.*, No. 23 C 4899, 2024 WL 1376353, at *3 (N.D. Ill. Apr. 1, 2024). For the reasons set forth below, this Court adopts this last approach.

The Supreme Court has explained that "[t]he law of Art. III standing is built on a single basic idea—the idea of separation of powers." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422 (2021) (citation omitted). Federal courts "do not possess a roving commission to publicly opine on every legal question." *Id.* at 423. Standing keeps courts in their constitutional place: deciding actual "cases and controversies." *Id.* That is why, in the class action context, the class representative must "demonstrate the requisite case or controversy between themselves personally and [the defendants]." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). Otherwise, "there can be no confidence of 'a real need to exercise the power of judicial review.'" *Id.* at 508 (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221 (1974)).

But a class representative's individual standing is all that is required. Once the representative has "alleged a distinct and palpable injury to himself . . . [he] may have standing to seek relief on the basis of the legal rights and interests of others." *Warth*, 422 U.S. at 501. This principle is the foundation of any class action. As another court has explained, "[e]very time a lead plaintiff prosecutes an action on behalf of a class, she brings claims based on injuries she did not personally suffer—in other words, claims she could not have advanced individually." *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 778 (S.D.N.Y. 2012).

With this in mind, it is clear why JPMS's central argument—namely, that because Lauer was not *personally* injured by *all* Class Products, there is "no case or controversy . . . to resolve" with respect to the products he did not buy, Mot. 5 (citing *Raya*, 758 F. Supp. 3d at 829)—does not carry the day. Lauer need only show the existence of a justiciable case or controversy with respect to his own claims. He has done so. *See generally* SAC ¶¶ 66-82 (recounting a redressable

5

economic injury caused by JPMS). Thus, Lauer has demonstrated a legitimate need for judicial review without "piggy-back[ing] on the injuries of the unnamed class members." *Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002).

Ultimately, the issue here is not whether Lauer was injured (which would constitute a legitimate Article III challenge), but whether the gap between Lauer's injuries and the injuries of potential absent class members is so wide as to disqualify him as an appropriate class representative or render the class definition too broad. These questions can—and must—be considered at the class certification stage, but they do not pose a threshold Article III problem in this case.[4]

### 2. Injunctive Relief

JPMS also argues that this Court should dismiss Lauer's UDTPA claim for failure to establish likelihood of future harm. Injunctive relief is the only remedy available under the UDTPA, so a plaintiff evoking that statute must demonstrate standing to seek an injunction. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014). The Court agrees that Lauer has failed to do so.

---

[4] On a related note, JPMS challenges the existence of personal jurisdiction over the defendant with respect to claims regarding the Class Products that Lauer did not purchase himself. The Court declines to address that argument at this stage in the litigation. In a class action, the existence of personal jurisdiction is based on the class representative's claims, not those of unnamed class members. *Mussat v. IQVIA*, Inc., 953 F.3d 441, 447 (7th Cir. 2020). Here, because no class has been certified, Lauer is only the putative class representative, and the absent plaintiffs are only potential class members. This Court thus joins other district courts in concluding that "dismissal of absent class members' claims for lack of personal jurisdiction would be premature prior to a motion for class certification." *Weiss v. Grand Campus Living, Inc.*, No. 18 C 00434-JRS-TAB, 2019 WL 1261405, at *2 (S.D. Ind. Mar. 19, 2019) (collecting cases).

"Standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion*, 594 U.S. at 431. As a general rule, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy." *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974). Instead, plaintiffs seeking an injunction must demonstrate they are "immediately in danger of sustaining some direct injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

The injury at the core of this case is rooted in JPMS's alleged deception: because of the "Made in the USA" labels, Lauer contends that he *thought* he purchased one thing when he *actually* purchased another. But as he admits, he is now "aware of the misrepresentations" that induced him to make the purchases. Opp. to Mot. to Dismiss 14, ECF No. 42. This puts him in a tough spot as far as injunctive relief is concerned. As the Seventh Circuit has recognized, future deception generally becomes implausible once past deception is revealed. *See Camasta*, 761 F.3d at 741 ("Since Camasta is now aware of JAB's sales practices, he is not likely to be harmed by the practices in the future."). Even if the "Made in the USA" labels are in fact unlawfully deceptive, Lauer cannot credibly claim he will be duped by them again.

Perhaps recognizing as much, Lauer articulates his theory of future harm in slightly different terms. He asserts that he "wants to purchase the Class Products again, but he cannot be certain that he would not be misled again in the future unless and until Defendant makes appropriate changes to its Class Products' labeling and marketing." SAC ¶ 125.

This theory of harm also misses the mark. The Court accepts, as it must, Lauer's stated desire to purchase the products again. The Court also accepts that he may refrain from doing so because he distrusts the labels in question. It is unclear, however, how any of this amounts to a cognizable Article III injury. Uncertainty alone is a far cry from a concrete harm. *See Clark v.*

*Eddie Bauer LLC*, No. 21 C 35334, 2024 WL 177755, at *4-5 (9th Cir. Jan. 17, 2024) (Bea, J., concurring in part and dissenting in part) (explaining that an inability to rely on marketing practices "does not have a historical or common-law analogue" and thus does not constitute an Article III injury under *TransUnion*). Furthermore, Lauer does not explain why, having allegedly discovered JPMS's misrepresentations **after** purchasing some of the products, he could not do so **before** purchasing additional products. Nor can Lauer establish standing by claiming that, absent injunctive relief, he will opt to go without a product he would otherwise buy. Such self-imposed "injuries" rarely (if ever) confer standing to seek an injunction. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 422 (2013).

In short, there is no theory under which Lauer has demonstrated an imminent risk of concrete injury. As such, Article III bars his claims for injunctive relief and mandates dismissal of his UDTPA claim.

B.  **Actual Damages**

JPMS argues that this Court should dismiss the ICFA claims because Lauer has failed to plead actual damages. However, Lauer's pleadings are adequate on this score.

To bring a claim under the ICFA, a plaintiff must demonstrate actual pecuniary loss. *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). The Seventh Circuit has explained that "actual loss may occur if the seller's deception deprives the plaintiff of the benefit of her bargain by causing her to pay more than the actual value of the property." *Id.* Thus, a plaintiff who "actually bought the product" can plead actual damages by "simply alleg[ing] that she suffered actual pecuniary loss because she allegedly paid more than the product was worth." *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 865 (N.D. Ill. 2021).

8

Lauer does exactly this in the Complaint, asserting that he "paid a price premium for the Class Products or chose them over competing products due to Defendant's misrepresentations and deceptive packaging." SAC ¶ 117.

Nevertheless, JPMS argues that more is required. Specifically, it urges this Court to accept an outlier theory of damages pleading articulated in *Sabo v. Wellpet*, 250 F. Supp. 3d 332 (N.D. Ill. 2017) and *Shirley v. Reynolds Consumer Products*, 636 F. Supp. 3d 907 (N.D. Ill. 2022). Those cases seem to differentiate between necessary goods and unnecessary goods. When a product is necessary such that there is an "obvious reason" that the plaintiff would have purchased an alternative, the plaintiff's assertion that he paid a premium is insufficient to show actual damages. *Shirley*, 636 F. Supp. 3d at 913. The plaintiff must go further and show that cheaper alternatives were in fact available. *Id.* Applying that theory to this case, JPMS argues that Lauer "would have had to purchase an alternative product" if he had not purchased the JPMS products at issue, and thus, he must "allege facts establishing that similar products without the 'Made in the USA' label are available in the market at a lower price." Mot. 10.

The Court declines to adopt that theory of damages pleading. As many courts have remarked, a plaintiff's allegation that he "paid more than the product was worth . . . is a commonly accepted theory of actual pecuniary loss under the ICFA." *Raya*, 758 F. Supp. 3d at 833. *See also Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1160 (N.D. Ill. 2022) ("Numerous courts have permitted ICFA claims to proceed where, as here, a plaintiff claimed that . . . she either paid more for the product than she otherwise would have or would not have purchased the product had she known the truth."); *Gibson*, 754 F. Supp. 3d at 811 (same). JPMS has not presented a compelling reason to depart from this majority approach.

9

### C. FRCP 9(b) Pleading Requirements

Any claim that "sounds in fraud" must be alleged with particularity pursuant to Federal Rule of Civil Procedure 9(b), which generally requires the plaintiff to "describe[e] the who, what, when, where, and how" of the fraud. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). The rule "is designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (citation omitted). As relevant here, the heightened pleading standard applies to allegations of fraud in the context of claims based on the ICFA, *Camasta*, 761 F.3d at 737, the UDTPA, *Odle v. GameStop Corp.*, 774 F. Supp. 3d 982, 997 (S.D. Ill. 2025), and intentional misrepresentation, *Jasper v. Abbott Lab'ys, Inc.*, 834 F. Supp. 2d 766, 771 (N.D. Ill. 2011).

JPMS argues that Lauer has not satisfied Rule 9(b) as to these claims because he (1) fails to sufficiently allege fraudulent intent and (2) fails to plead with particularity the content of the alleged misrepresentation. The Court considers these arguments in turn.

#### 1. Intent

Rule 9(b) "does not require a complaint to allege intent with particularity." *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 707–08 (N.D. Ill. 2020). Although the "*circumstances constituting fraud*" must be so alleged, "intent . . . may be alleged generally." Fed. R. Civ. P. 9(b) (emphasis added). Of course, the allegations cannot be conclusory. The fraud charge must be "responsible and supported, rather than defamatory and extortionate." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

As a preliminary matter, it is important to note that "'intent to deceive' is not a required element [of an ICFA claim] . . . . It is enough to allege that the defendant committed a deceptive or unfair act and intended that the plaintiff rely on that act." *Wigod v. Wells Fargo Bank, N.A.*, 673

10

F.3d 547, 574–75 (7th Cir. 2012). Here, the deceptive act is the allegedly misleading use of "Made in the USA" labels. Thus, as far as Lauer's ICFA claim is concerned, he need only demonstrate that JPMS intends customers to rely on those labels. He easily does so under Seventh Circuit precedent. In *Kahn v. Walmart Inc.*, for example, the Seventh Circuit accepted an allegation that Walmart intends customers to rely on shelf-pricing, noting that "[t]he contrary position seems absurd." 107 F.4th 585, 604 (7th Cir. 2024). The same logic applies here. Just as "Walmart uses shelf pricing to inform consumers of its prices so they can compare items and decide what to buy," *id.*, JPMS uses product labels to provide customers with information that informs purchasing decisions, SAC ¶¶ 62-65. The Complaint therefore satisfies the intent prong of the ICFA.[5]

Turning to Lauer's intentional misrepresentation claim, however, the allegations of intent are inadequate. A plaintiff relying on this Illinois law theory must show that the defendant intended to induce the plaintiff to act in reliance on the misrepresentation at issue. *Kinman v. Kroger Co.*, 604 F. Supp. 3d 720, 731 (N.D. Ill 2022). Another court has aptly explained the application of Rule 9(b) to common law fraud claims: while a plaintiff may allege intent generally, the allegations cannot rest on a defendant's "simple knowledge that a statement is false" or "generalized motive to . . . increase sales and profits." *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018). Instead, the plaintiff must "alleg[e] facts to show that defendants had both motive

---

[5] The same is true as to the UDTPA claim, which does not require intent to mislead. *See Kahn v. Walmart Inc.*, 107 F.4th 585, 602 (7th Cir. 2024) (concluding that "[t]he district court should have assessed this separate [UDTPA] unfairness claim under the less demanding standard of Rule 8(a)" rather than under Rule 9(b). As discussed above, however, the UDTPA theory fails because injunctive relief is not warranted.

and opportunity to commit fraud, or facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.*

Lauer provides no such facts here. Rather, he asks this Court to infer intent from the fact that JPMS has "expansive resources and operational sophistication" and because it has no reason to "violate[] the well-established laws, rules, and regulations surrounding the use of 'Made in the USA' [labels]. . . other than to deceive consumers and for its own personal financial gain." SAC ¶ 23. As other courts in this district have found, allegations that a "[d]efendant is a large scale and sophisticated company . . . with major, national distribution" are insufficient to demonstrate intent under Rule 9(b). *See In re Beyond Meat, Inc., Protein Content Mktg. & Sales Pracs. Litig.*, 718 F. Supp. 3d 800, 823 (N.D. Ill. 2024) (citation omitted) (collecting cases). The rule permits intent to be alleged generally, but it requires more than the conclusory allegations that Lauer puts forward in the Complaint.

## 2. Content of the Misrepresentation

The parties also contest whether Lauer has pled the content of the misrepresentation with sufficient particularity under Rule 9(b). As JPMS notes, FTC regulations prohibit companies from using a "Made in the USA" label on products containing foreign ingredients only when those ingredients are present in "more than a negligible amount." Because Lauer did not specify how much of the foreign ingredients each of the Class Products contain, JPMS argues that his ICFA and intentional misrepresentation claims should be dismissed.

This Court is not aware of any case law requiring a plaintiff contesting a "Made in the USA" label to provide specific product formulations, and it declines to impose such a requirement now. Nevertheless, the Court agrees with JMPS's basic contention that some of Lauer's allegations are too general to meet Rule 9(b)'s requirements.

For example, the Complaint sometimes makes vague references to unnamed, foreign-sourced ingredients. *See* SAC ¶¶ 55, 57, 59. And where the Complaint *does* name the ingredients at issue, it does not specify exactly which Class Products contain them. *See* SAC ¶¶ 52-23, 56; SAC Ex. A. As the Seventh Circuit has explained, Rule 9(b) functions to minimize[e] 'strike suits' and 'fishing expeditions'" by "force[ing] the plaintiff to do more than the usual investigation before filing his complaint." *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994); *Ackerman*, 172 F.3d at 469. Neither the vague references to foreign ingredients nor the bare list of over 200 allegedly infringing products makes clear that such an investigation has taken place.

### D. Unjust Enrichment

JPMS's final argument is that Lauer's unjust enrichment claim must be dismissed because he has failed to state a valid claim based on that theory.

In Illinois, unjust enrichment does not usually constitute an independent cause of action. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Instead, "it is a condition that may be brought about by unlawful or improper conduct as defined by law." *Charles Hester Enters., Inc. v. Ill. Founders Ins. Co.*, 484 N.E.2d 349, 354 (Ill. App. 3d 1985). Thus, "if an unjust enrichment claim rests on the same improper conduct alleged in another claim . . . unjust enrichment will stand or fall with the related claim." *Cleary*, 656 F.3d at 517.

Here, Lauer's unjust enrichment claim is predicated on the same conduct as his state law claims. Thus, to the extent that the latter fail, the former fails as well. *See O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 721 (N.D. Ill. 2020) (holding that unjust enrichment claim survives only to the extent that state law claims survive); *Curtis v. 7-Eleven, Inc.*, No. 21 C 6079, 2022 WL

4182384, at *18 (N.D. Ill. Sept. 13, 2022) (same); *Thomas v. Walmart Inc.*, 720 F. Supp. 3d 650, 665-66 (N.D. Ill. 2024) (same).

### E. Leave to Amend

Federal Rule of Civil Procedure 15 instructs courts to "freely give leave [to amend a pleading] when justice so requires." While Rule 15 "is not a license for carelessness or gamesmanship," *Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217, 1225 (7th Cir. 1988), amendment is favored "[i]n the absence of any apparent or declared reason" such as undue delay, bad faith, or futility. *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir.2004) (citation omitted).

Although this Court granted Lauer leave to amend once before, it is not persuaded that an additional chance to amend would be against the interest of justice. Thus, Lauer is permitted to amend his Complaint to address its deficiencies under Rule 9(b).

### III. CONCLUSION

For the foregoing reasons, Counts II (UDTPA) and IV (negligent misrepresentation) are dismissed with prejudice. Counts I (ICFA), III (unjust enrichment), and V (intentional misrepresentation) are dismissed without prejudice. Lauer is granted leave to amend by January 9, 2026.

Date: December 4, 2025

John J. Tharp, Jr.
United States District Judge