**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SAM LAUER, Individually and On Behalf of All Others Similarly Situated,<br>*Plaintiff,*<br><br>v.<br><br>JOHN PAUL MITCHELL SYSTEMS,<br><br>*Defendant.* | Case No. 1:25-cv-02438<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**<u>CLASS ACTION COMPLAINT</u>**

1. Plaintiff Sam Lauer ("Plaintiff Lauer"), individually and on behalf of all others similarly situated, brings this Class Action Complaint for damages, and any other available remedies, resulting from the illegal actions of defendant John Paul Mitchell Systems ("JPMS" or "Defendant") concerning unlawful, unfair and deceptive labeling of Defendant's hair care products, with the designation and representation that the products are/were made and/or manufactured in the USA without clear and adequate qualification of the foreign ingredients and components contained therein, as required by federal rules and state law.

2. The unlawfully represented products are sold through various channels, including, but not limited to, direct-to-consumer sales on the Defendant's website, third-party platforms such as Amazon.com ("Amazon"), professional hair care salons, and third-party merchants operating in brick-and-mortar stores like ULTA.

3. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorneys.

4. JPMS labels its products with a clear and unqualified statement that they are "Made in the USA," which is prominently displayed on the product label and in product descriptions online. This claim appears on every product manufactured, sold, or distributed by the Defendant, across all brands under the JPMS umbrella, including the products purchased by the Plaintiff.

5. Contrary to Defendant's express representations, and its failure to clearly and adequately qualify those representations, the products purchased by Plaintiff are substantially and materially composed of indispensable foreign ingredients and components.

6. Plaintiff Lauer purchased JPMS's Tea Tree Lavender Mint Moisturizing Shampoo, Tea Tree Lavender Mint Moisturizing Conditioner, Tea Tree Special Invigorating Conditioner, Tea Tree Lemon Sage Thickening Shampoo, Tea Tree Lemon Sage Thickening Conditioner, and Tea Tree Grooming Pomade (the "Lauer Products" or "Products"), which are labeled, marketed and sold to consumers as "Made in the USA."

7. However, the Products are made with numerous ingredients and components, that are not grown, sourced or otherwise made in the United States.

8. In addition to the unqualified "Made in the USA" representation on the Products, JPMS's other haircare products—including, but not limited to, those featured on its website[1] [and in **Exhibit A** filed herewith] (together with the Products, the "Class Products")—also display the same unqualified "Made in the USA" representation or a similar unqualified U.S. origin claim.[2]

[1] *See* https://www.paulmitchell.com/all-products (last visited March 6, 2025).
[2] References to "Made in the USA" in this Complaint shall encompass any synonymous representations indicating U.S. origin.

9. Defendant's conduct of advertising and selling deceptively labeled products bearing the representation that such products are "Made in the USA" violates: (1) Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/, *et seq*.; and constitutes (2) unjust enrichment.

10. Such conduct is also in violation of 16 C.F.R. § 323 (Federal Trade Commission 2021) (the "MUSA Rule").

11. This conduct caused Plaintiff, and other similarly situated individuals, damages, and requires restitution.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), because: (1) there is minimal diversity, including because Plaintiff Lauer is a citizen of the State of Illinois, and Defendant is a California corporation with its headquarters and principal place of business in California, and is therefore a citizen of the State of California; (2) the amount in controversy in this matter exceeds $5,000,000, exclusive of interest and costs; and (3) there are more than one hundred (100) people in the putative class.

13. The Class Products (as defined in **Exhibit A** attached hereto) consists of nearly 200 different products. Although Defendant is a privately held company and does not publicly disclose its revenue, Defendant's annual revenue was estimated to be about $1 billion in 2015.[3] The prices per Class Product ranges from approximately $6.50 to $60.00, for an average retail price of $33.25.[4] As an indication of Defendant's current revenue, an analysis of Defendant's product listings on Amazon—limited to just a few specific products—reflects estimated monthly sales of

---

[3] *See* https://en.wikipedia.org/wiki/John_Paul_Mitchell_Systems (last visited March 24, 2025)
[4] *See, e.g.*, https://www.paulmitchell.com/all-products (last visited March 21, 2025).

approximately $1 million.[5] Plaintiff Lauer seeks actual damages, punitive damages, restitution, disgorgement, and attorneys' fees, and costs. The $5,000,000 amount in controversy under CAFA is met. *See* **Exhibit B** attached hereto and incorporated by reference into the Second Amended Complaint.

14. Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff Lauer resides in the County of Cook, State of Illinois, which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendant conducted business within this judicial district at all times relevant.

15. Venue is also proper under 815 ILCS 505/10a(b) because: (a) Defendant does business within this District; and (b) because the transactions at issued occurred while Plaintiff was within this District.

## PARTIES

16. Plaintiff Lauer is, and at all times mentioned herein was, a natural person, an individual citizen and resident of the County of Cook, State of Illinois.

17. According to the California Secretary of State's website, Defendant is a corporation that is organized and has existed under the laws of the State of California since March 31, 1980, with its current principal place of business within the State of California located at 20705 Centre Pointe Parkway, Santa Clarita, California 91350. Therefore, under 28 U.S.C. § 1332(c), Defendant is a citizen of the State of California.

18. Plaintiff alleges that at all times relevant herein Defendant conducted business within the State of Illinois, in the County of Cook, and within this judicial district.

[5] *See* **Exhibit B**.

19. Unless otherwise indicated, the use of Defendant's names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendant, respectively.

## NATURE OF THE CASE

20. Founded in 1980, JPMS is one of the largest and most recognized hair care product companies in the United States, and potentially the world. Its annual revenue is estimated to exceed $1 billion.[6]

21. Defendant sells the Class Products on its own website, as well as through third-party platforms, including but not limited to Amazon, Target.com, Walgreens.com, Ulta.com and Fragrancenet.com.

22. The Class Products are also available in retail and grocery stores such as Target, ULTA, Walgreens, CVS, and others, as well as in professional hair care salons for purchase by consumers for personal household use.

23. Defendant markets and sells a vast portfolio of hair care products for both women and men.

24. Given its expansive resources and operational sophistication, it is difficult to understand why Defendant so clearly violated the well-established laws, rules, and regulations surrounding the use of "Made in the USA" or any derivative thereof, other than to deceive consumers and for its own personal financial gain.

25. At all times relevant, Defendant made and continues to make material misrepresentations regarding the Class Products.

---

[6] *See* note 3, *supra*.

26. Specifically, Defendant advertised, marketed, promoted, and sold the Class Products as "Made in the USA," without disclosing the use of foreign ingredients and/or components, when in fact, this claim was false.

27. Although Defendant represented that the Class Products were "Made in the USA" without qualification, the Class Products are substantially made with ingredients and components sourced, grown, or manufactured outside the United States.

28. Each consumer, including Plaintiff, was exposed to the same material misrepresentations, as similar labels were placed on all Class Products and/or contained in the description of the Class Products online that were sold—and currently sold—throughout the United States, including within Illinois.

29. Federal rules and regulations regarding the use of "Made in the United States" claims—including any synonymous claims, whether express or implied—are well-established and clearly defined with respect to products and services.

30. Specifically, the MUSA Rule clearly defines the meaning of "Made in the United States", including synonymous phrases,[7] as well as when it can be used without clear and adequate qualification notifying consumers that the good or service in question contains or is made with ingredients or components that are not made or sourced in the United States.[8]

---

[7] *See* 16 C.F.R. § 323.1(a) ("The term Made in the United States means **any unqualified representation,** express or implied, **that a product or service**, or a specified component thereof, **is of U.S. origin**, including, but not limited to, a representation that such product or service is "made," "manufactured," "built," "produced," "created," or "crafted" in the United States or in America, or any other unqualified U.S.-origin claim.") (emphasis added).

[8] *See* 16 C.F.R. § 323.2 Prohibited Acts ("In connection with promoting or offering for sale any good or service, in or affecting commerce as "commerce" is defined in section 4 of the Federal Trade Commission Act, 15 U.S.C. 44, **it is an unfair or deceptive act or practice** within the meaning of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. 45(a)(1), **to label any product as Made in the United States unless** the final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and **all or virtually all ingredients or components of the product are made and sourced in the United States**. (emphasis added).

31. As a consequence of Defendant's unfair and deceptive practices, Plaintiff and other similarly situated consumers purchased the Class Products under the false impression and in reliance upon Defendant's representations that the Class Products were actually made in the United States with ingredients and components sourced from within the United States.

32. As a result, Plaintiff and other similarly situated consumers overpaid for the Class Products, purchased the Class Products over the products of competitors, and/or purchased the Class Products under the belief that the product they purchased was made in the United States and did not contain numerous ingredients and components from outside the United States.

33. Despite the clearly established and well-defined federal rules regarding "Made in the United States" claims, Defendant falsely, unfairly and deceptively advertised, marketed and sold the Class Products, including the Products purchased by Plaintiff, as "Made in the USA" without clear and adequate qualification informing consumers of the presence of foreign ingredients and/or components as further discussed herein.

34. Had Plaintiff and other consumers similarly situated been made aware that the Class Products contained a substantial amount of ingredients and/or components sourced from outside of the United States, they would not have purchased the Class Products.

35. As a result of Defendant's false, unfair, and deceptive statements and/or its failure to disclose the true nature of the Class Products, along with the other conduct described herein, Plaintiff and similarly situated consumers purchased hundreds of thousands of units of the Class Products in Illinois, suffering, and continuing to suffer, harm, including the loss of money and/or property.

36. Defendant's conduct, as alleged herein, violates Illinois law, as detailed below.

37. This action seeks, among other things, equitable relief; restitution of all amounts unlawfully retained by Defendant; and disgorgement of all ill-gotten profits resulting from Defendant's alleged wrongdoing.

## FACTUAL ALLEGATIONS

38. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully stated herein, and further allege as follows:

39. Upon information and belief, Defendant is and was, at all relevant times, aware of the various federal and state laws, regulations, and rules governing the unqualified use of "Made in the USA" claims.

40. Defendant produces, markets, and advertises various products, including the Products purchased by Plaintiff, as "Made in the USA," without clear or adequate qualification.

41. Regardless of where the Defendant placed its unqualified "Made in the USA" representations on the Class Products, these unqualified representations all violate the MUSA Rule as discussed above.

42. As a result of the Defendant's unqualified labeling of the Class Products as "Made in the USA," and upon information and belief, this claim was further disseminated through retailer websites, including but not limited to Walgreens.com, JCPenney.com, Target.com, and FrangranceNet.com.

43. Below are non-exhaustive examples of the aforementioned representation appearing on third-party retailers' websites:

walgreens.com

es Shop Savings Photo More Weekly Ad Vaccinations

Home > Shop > Beauty > Hair Care > Salon Hair Care



Shop all Paul Mitchell

Paul Mitchell Tea Tree Special Shampoo, 10.14 fl oz

4.3 ★★★★☆ 27

$19.99

When ordered online

Extra 15% off $35 Sitewide code MAR15 or
Extra 20% off $50 code MAR20

Sign in to unlock savings and earn myWalgreens cash rewards on every purchase.

Store Pickup

In stock at 19501 BEACH BLVD, HUNTINGTON BEACH, CA 92648

Check other stores

Ready in as little as **30 minutes** if order placed by 9pm. Curbside or drive-thru pickup available. $10 minimum order required. Details

1 Add for pickup

Same Day Delivery

As soon as 1 hour or schedule delivery.

Shipping

Arrives in 2-4 days

Save to shopping list

**Description**

- Get a head start every morning
- With tea tree oil, peppermint & lavender
- Hair becomes fresh & clean

Ordinary shampoos need not apply! Get a head start every morning and experience the refreshing tingle of Tea Tree Special Shampoo. This #1 best-selling shampoo contains special ingredients and tea tree oil to help wash away impurities leaving hair fresh, clean, full of vitality and luster. Tea tree oil, peppermint and lavender invigorate the scalp and leave hair smelling great. Color safe and ideal for all hair types.

Made in United States

Wet hair before applying shampoo. Massage into hair then rinse and repeat.

©John Paul Mitchell Systems

jcpenney.com

**How to Use**

Lather the Tea Tree Oil Shampoo into your damp hair and rinse. For best results, follow with the Tea Tree Special Conditioner®. Consult a dermatologist for use on infected and/or sensitive scalp. We do not recommend the Tea Tree Shampoo for broken skin.

- Hair Type: Normal
- Features: Value Size
- Concerns: Color Protection, Scalp Care
- Hair Color: Blonde, Gray, Ombre, Red, Brunette, Black
- Fluid Ounces: 33.8 oz.
- Ingredients: Paraben-Free
- Hairspray Hold: Light/Flexible Hold
- Formulation: Liquid
- Cbd: No
- Country of Origin: Made in US

**Ingredients:**

Aqua (Water, Eau), Sodium C14-16 Olefin Sulfonate, Cocamidopropyl Betaine, Sodium Lauryl Sulfate, Melaleuca Alternifolia (Tea Tree) Leaf Oil, Panthenol, Menthyl Lactate, Acrylates/C10-30 Alkyl Acrylate Crosspolymer, Polyquaternium-7, Glycol Stearate, PEG-150 Distearate, Glycerin, Magnesium Nitrate, Magnesium Chloride, Sodium Chloride, Menthol, Citric Acid, Sodium Sulfate, Tetrasodium EDTA, Sodium Hydroxide, Sodium Benzoate, Methylchloroisothiasolinone, Methylisothiazolinone, Fragrance (Parfum), Terpineol, Lavandula Oil/Extract, Linalool, Linalyl Acetate, Pinene, Terpinolene, Beta-Caryophyllene, Limonene, Turpentine, Citronellol, Yellow 5 (CI 19140), Blue 1 (CI 42090).


target.com
Categories
Deals
New & featured
Pickup & delivery
What can we help you find?
Sign in
Shop all Paul Mitchell
Paul Mitchell The Hair Conditioner - 10.14 fl oz
2
New at
$15.59 ($1.54/ounce)
See 1 deal for this item
Qty 1
Add to cart
Specifications
Hair Type: All Hair Types
Product Warning: Eye irritant
Product Form: Liquid
Beauty Purpose: Texturizing, Moisturizing, Conditioning, Smoothing
Net weight: 10.14 Ounces
TCIN: 93179270
UPC: 009531139012
Item Number (DPCI): 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
Origin: Made in the USA
If the item details above aren't accurate or complete, we want to know about it. Report incorrect product info.


fragrancenet.com
Paul Mitchell unisex
Tea Tree Lemon Sage Thickening Shampoo 10.14 oz
by Paul Mitchell (view all)
Select Size
tea tree lemon sage thickening shampoo 10.14 oz $22.99
tea tree lemon sage thickening shampoo 33.8 oz $56.99
View All "Paul Mitchell"
Price with Coupon
$14.94
Activate Coupon - click here
OUR PRICE
$22.99
afterpay available for orders over $35.00
Earn 115 reward points with sign up and purchase!
ADD TO BAG
LEMON SAGE thickening SHAMPOO
Hover to zoom
Item# 167853
reviews | Add Review
FREE SHIPPING (ORDERS OVER $59)
Paul Mitchell
by Paul Mitchell
forever blonde conditioner
Save Today!
Paul Mitchell
by Paul Mitchell
paul mitchell awapuhi wild ginger hydrasoft glossing treatment
Save Today!
BRAND INFORMATION
PRODUCT DESCRIPTION
REVIEWS (1)
Description
Ingredients
Instructions
Cure the a.m. blues with citrus refreshment that goes straight to your head. Zest up fine to normal hair with unique thickening agents. Natural extracts of uplifting lemon, soothing sage, tingly peppermint and tea tree oil invigorate and renew mind, spirit and hair. Safe for color treated hair. John Paul Mitchel Systems does not conduct or endorse animal testing. Made in USA

44. In the case of the Class Products, Defendant's unqualified claim is displayed in clearly legible, contrasting font on product labels.

45. Below is an example of the aforementioned representation that appears on the packaging of the Class Products:




46. This representation is prominently displayed on the packaging of nearly every Class Product.

47. As a result of Defendant's unfair and deceptive labeling, the Class Products are also marketed online with the unqualified representation of being "Made in the USA" in online advertising and product descriptions where the Class Products are sold.

48. As a result of the unqualified U.S. origin claims on the Class Products' packaging and in advertising / product descriptions, consumers have been misled for years, leading to both initial and repeat purchases of products they believed were made in the United States with ingredients and components sourced from the U.S.

49. Despite the clear and unqualified claim that the Class Products were "Made in the USA," they are substantially made with foreign ingredients and/or components, a fact that is not properly disclosed on the label, as required by the MUSA Rule and state law.

50. Attached to the Third Amended Complaint as **Exhibit A**, which is incorporated by reference into this Complaint, is a detailed list of each Class Product and their corresponding ingredients. This Exhibit identifies for each Class Product: (1) ingredients that are definitively foreign in origin, which appear in **bold**; and (2) ingredients that are likely foreign in origin, which appear underlined. Supporting references for each ingredient demonstrating the foreign origin is also included in **Exhibit A**.

51. As outlined in detail in **Exhibit A**, the Products purchased by the Plaintiff contain tea tree oil—the namesake and key ingredient of Defendant's Tea Tree product line—which is not sourced from the United States.[9]

52. Additionally, the following Products purchased by Plaintiff contain other foreign ingredients in addition to the tea tree oil (*see also,* **Exhibit A**):

---

[9] *See* **Exhibit A**; *see also,* https://en.wikipedia.org/wiki/Melaleuca_alternifolia ("Endemic to Australia, it occurs in southeast Queensland and the north coast and adjacent ranges of New South Wales where it grows along streams and on swampy flats, and is often the dominant species where it occurs.") (last visited March 6, 2025).

a. Tea Tree Lavender Mint Moisturizing Shampoo: (1) Cocamidopropyl Betaine; (2) Lavandula Angustifolia (Lavender) Extract; (3) Cocamide MIPA; (4) Citrus Aurantium Peel Oil; (5) Lavandula Oil/Extract; and (6) Pogostemon Cablin Oil.

b. Tea Tree Lavender Mint Moisturizing Conditioner: (1) PEG-7 Glyceryl Cocoate; (2) Lavandula Angustifolia (Lavender) Flower Extract; (3) Mentha Arvensis Leaf Extract (likely foreign); (4) Melaleuca Alternifolia (Tea Tree) Leaf Water; (5) Citrus Aurantium Peel Oil; (6) Pogostemon Cablin Oil, Lavandula Oil/Extract.

c. Tea Tree Lemon Sage Thickening Shampoo: (1) Cocamidopropyl Hydroxysultaine and (2) Cocamide MIPA.

d. Tea Tree Special Invigorating Conditioner: (1) Mentha Piperita Oil (Peppermint); (2) Hedychium Coronarium (White Ginger) Extract; (3) Aloe Barbadensis Leaf Extract (likely foreign); (4) Anthemis Nobilis Extract; (5) Lawsonia Inermis (Henna) Extract; (6) Simmondsia Chinensis (Jojoba) Extract; (7) Rosmarinus Officinalis (Rosemary) Extract (likely foreign); and (8) Lavandula Angustifolia Oil (Lavender).

53. Nevertheless, each and every container of Defendant's tea tree products claims to be "Made in the USA" without any qualification.

54. The pervasiveness of foreign ingredients throughout all Class Products is outlined in detail in **Exhibit A**, but by way of example, many Class Products contain *Simmondsia chinensis* (jojoba), which is not from the United States.[10]

[10] *See* https://www.fao.org/faostat/en/#data/QCL/visualize (Select Item: Jojoba seeds. According to the Food and Agriculture Organization of the United Nations, jojoba is not produced in commercial quantities in the United States.)

55. Indeed, at least 29 Class Products contain this foreign sourced jojoba, including the Tea Tree Special Invigorating Conditioner purchased by Plaintiff (*see* **Exhibit A**), yet each of these products are labeled and sold as "Made in the USA" without qualification.

56. The Class Products also contain additional ingredients and components that are not sourced from the United States, including for example, but not limited to: (1) Anthemis Nobilis Flower Extract (in approximately 30 Class Products); (2) Butyrospermum Parkii (Shea) Butter (in approximately 9 Class Products); (3) Citrus Aurantium Peel Oil (in approximately 54 Class Products); (4) Cocamidopropyl Betaine (in approximately 31 Class Products); (5) Castor Oil or its derivatives (in approximately 21 Class Products); and (6) Hedychium Coronarium Root Extract (in approximately 18 Class Products). *See* **Exhibit A** for full list.

57. All Class Products make the same unqualified "Made in the USA" claims despite containing more than a *de minimis* amount of ingredients as set forth in detail in **Exhibit A**.

58. Defendant's misrepresentations regarding the Class Products being "Made in the USA," without qualification, are widespread across all the Class Products, and continue to be made, without clear and adequate qualification, as of the filing of this Third Amended Complaint.

59. Some additional ingredients, components, and even packaging not identified in **Exhibit A** that are used by Defendant can be sourced either domestically or internationally—and since this information is exclusively known to Defendant at this time—Plaintiff cannot fully allege the extent of Defendant's unqualified "Made in the USA" violations without further discovery. Nevertheless, Defendant's blatant and willful disregard for the laws discussed herein is well established by the aforementioned non-exhaustive examples including the annotated ingredients lists set forth in **Exhibit A**.

60. In addition, the sourcing and manufacturing origin of certain ingredients used in Defendant's formulas within the Class Products cannot be determined through any publicly available information. Some ingredients incorporated into the Class Products are synthetic or chemically processed compounds for which geographic origin cannot be discerned from the ingredient name or chemical composition alone. The country of origin for these ingredients can be confirmed only through Defendant's, or its agent's, internal Certificates of Analysis or Certificates of Conformity ("COA"), as well as related supplier documentation. This information is solely within the possession, custody, and control of Defendant and its agents, rendering it impossible for Plaintiff to plead facts relating to the sourcing and manufacturing origin of these ingredients with greater specificity absent discovery.

61. There is no reliable, competent, or commercially available laboratory testing method capable of determining the country of origin of individual ingredients from a finished consumer product. Origin determinations depend on supply-chain records, sourcing documentation, and manufacturer-controlled COAs and supplier disclosures, all of which are exclusively within Defendant's possession and control. Plaintiff therefore cannot obtain this information through testing or independent analysis, and the full scope of the falsity of Defendant's sourcing representations can be established only through discovery of Defendant's and its agents' records.

62. Even independent of the undisclosed sourcing of these formulation inputs and components, Defendant's violation of the MUSA Rule is apparent based on the inclusion of tea tree ingredients alone. Tea tree is a central, functional, and performance-driving ingredient that Defendant deliberately emphasizes in the product's name, promotional claims, and marketing materials. Its foreign origin therefore constitutes more than a de minimis amount of foreign content as contemplated by the MUSA Rule for purposes of an unqualified U.S.-origin claim. Because

Defendant knowingly uses and highlights a material foreign ingredient in the product purchased by Plaintiff, Defendant's unqualified "Made in the USA" representation is false, misleading, and unlawful on its face.

63. Further reinforcing Defendant's violation of the MUSA Rule, a review of the number and composition of foreign ingredients identified across the Class Products demonstrates that the inclusion of foreign content is neither isolated nor incidental. As reflected in the ingredient disclosures and supporting exhibit (**Exhibit A** filed herewith), Defendant's formulas incorporate multiple ingredients that are foreign in origin or overwhelmingly sourced from foreign supply chains. The presence of numerous foreign ingredients within a single product, and across Defendant's product line, reflects a formulation and sourcing strategy that is fundamentally incompatible with an unqualified "Made in the USA" representation. This numerosity further establishes Defendant's disregard for the MUSA Rule and confirms that the challenged representation is misleading as a matter of law.

64. By failing to disclose the use of foreign ingredients and components, Defendant has unfairly and deceptively misrepresented the Class Products as being of purely U.S. origin.

65. Defendant possesses superior knowledge of the true facts, which were not disclosed, thereby tolling the applicable statute of limitations.

66. Most consumers have limited awareness that products—along with their ingredients and components—labeled as made in the United States may, in fact, contain ingredients or components sourced, grown, or manufactured in foreign countries.

67. This is a material factor in many purchasing decisions, as consumers believe they are buying superior goods while supporting American companies and jobs.

68. American consumers generally perceive products, ingredients, and components of U.S. origin as being of higher quality than their foreign counterparts.

69. On information and belief, Defendant either charged a premium for the Class Products compared to its competitors or gained a competitive advantage by having the Class Products chosen over others based on false, unqualified "Made in the USA" claims. Federal rules and state laws are designed to protect consumers from such false representations and predatory conduct.

## FACTS SPECIFIC TO PLAINTIFF SAM LAUER

70. Plaintiff Lauer is a regular user of Defendant's hair care products and had read, believed, and relied upon Defendant's unqualified claim that its products were "Made in the USA" when making previous purchases.

71. On or about August 28, 2024, Plaintiff Lauer searched online from his home in Cook County, Illinois, looking to purchase various hair care products.

72. While searching online, Plaintiff Lauer found the Lauer Products advertised for sale on FragranceNet.com.

73. Below the picture of each of the Lauer Products that Plaintiff Lauer viewed on FragranceNet.com was the unqualified representation in the Product Description stating that the Lauer Products were "Made in USA," reaffirming Plaintiff Lauer's prior belief.

74. Relying on the unqualified "Made in USA" representation in the Lauer Products' description—as any reasonable consumer would—and seeking to purchase a product made in the United States with U.S. ingredients, especially given that it is a hair care product, Plaintiff Lauer purchased Defendant's Tea Tree Lavender Mint Moisturizing Shampoo (10.14 oz) for $19.59, the Tea Tree Lemon Sage Thickening Shampoo (10.14 oz) for $16.09, the Tea Tree Lemon Sage

Thickening Conditioner (33.8 oz) for $38.49 and the Tea Tree Grooming Pomade (3 oz) for $20.99, before tax and shipping for his personal use.

75. Continuing to believe that Defendant's products were indeed "Made in USA" without foreign ingredients or components, on November 10, 2024, Plaintiff Lauer again purchased Defendant's Tea Tree Lavender Mint Moisturizing Shampoo (33.8 oz) for $59.99 (excluding shipping and tax) and Defendant's Tea Tree Lemon Sage Thickening Shampoo (33.8 oz) for $56.99 (excluding shipping and tax) for his personal use from FragranceNet.com.

76. Under the same impression that Defendant's products, and their ingredients, were of U.S. origin, on February 12, 2025, Plaintiff Lauer purchased Defendant's Tea Tree Lavender Mint Moisturizing Conditioner (33.8 oz) for $38.99 (excluding shipping and tax) and Defendant's Tea Tree Special Invigorating Conditioner (33.8 oz) for $35.74 (excluding shipping and tax) for his personal use from FragranceNet.com.

77. Plaintiff's reliance on Defendant's unqualified "Made in the USA" representation was reasonable, as consumers are accustomed to seeing disclosures like "Made in the USA with globally sourced ingredients" or similar qualified variations on product packaging—if and when such U.S. origin claims are made.

78. For example, Defendant's competitors, including but not limited to OGX, Giovanni, and Redken, clearly and adequately qualify their "Made in the USA" claims, thereby not deceiving consumers. Below are non-exhaustive examples of such qualified claims:


obtener los mejores resultados, úsalo junto con otros productos para el cabello OGX.
*Includes Shampoo and Conditioner / *Incluye Champú y Acondicionador
Ingredients: Water (Aqua), Sodium C14-16 Olefin Sulfonate, Cocamidopropyl Betaine, Biotin, Hydrolyzed Collagen, Hydrolyzed Wheat Protein, Ethyltrimonium Chloride Methacrylate/Hydrolyzed Wheat Protein Copolymer, Polyquaternium-22, PEG-7 Amodimethicone, Linoleamidopropyl PG-Dimonium Chloride Phosphate, Polyquaternium-39, Sodium Hydrolyzed Potato Starch Dodecenylsuccinate, PEG-150 Pentaerythrityl Tetrastearate, PPG-2 Hydroxyethyl Cocamide, Laureth-4, Glycol Distearate, Propylene Glycol, Acrylates/C10-30 Alkyl Acrylate Crosspolymer, Hexylene Glycol, Sodium Citrate, Citric Acid, Sodium Hydroxide, Sodium Benzoate, Fragrance (Parfum), Ext. Violet 2 (CI 60730), Red 40 (CI 16035), Yellow 5 (CI 19140).
Made in U.S.A. with U.S. and/or Imported Ingredients
Questions? ogxbeauty.com
Dist. by: VOGUE INTL.
Clearwater, FL USA 33759
0 22796 91670 9
B9167002GC2NA
385ml e
18M
REDUCE, REUSE, RECYCLE.


Glycerin, Decyl Glucoside, Fragrance, *Cannabis Sativa (Hemp) Seed Oil, *Aloe Barbadensis (Aloe Vera) Leaf Juice, *Boswellia Carterii (Frankincense) Oil, *Curcuma Longa (Turmeric) Root Extract, *Chamomilla Recutita (Matricaria) Flower Extract, *Salvia Officinalis (Sage) Leaf Extract, *Humulus Lupulus (Hops) Extract, *Lawsonia Inermis (Henna) Flower/Fruit/Leaf Extract, Methyl Gluceth-20, Phenoxyethanol, Dehydroacetic Acid, Benzyl Alcohol, Citric Acid, Sodium Chloride
*USDA Certified Organic
12M
giovanni
ECO CHIC HAIR CARE
P.O.Box 6990
Made in U.S.A. from globally sourced materials
© Giovanni Cosmetics, Inc
Patent Pending Design




79. When consumers encounter an unqualified "Made in the USA" or similar claim, they reasonably assume the product contains no foreign-sourced ingredients or components.

80. Defendant's representations regarding the Class Products were unfair, deceptive, and misleading, as the Class Products were actually made with and/or contained ingredients or components sourced, grown, or manufactured outside the United States.

81. Accordingly, Defendant is not entitled to lawfully make unqualified representations that the products were "Made in the USA."

82. Such unqualified representations that the Products were made in the USA were material to Plaintiffs' decision to purchase the Products.

83. Indeed, in deciding to purchase the Products, Plaintiff relied on the labeling, marketing, and/or advertising (including product description) prepared and approved by Defendant and its agents, as disseminated through the Class Products' packaging and product descriptions containing the misrepresentations alleged herein.

84. Had the Plaintiff known that the Products, the Class Products, and their ingredients and/or components were not actually of U.S. origin, he would not have purchased the Products.

85. In other words, Plaintiff would not have purchased the Products but for the unqualified "Made in the USA" claim on the Products and Class Products.

86. As a result, Plaintiff was harmed because Defendant took Plaintiff's money due to its false, unqualified, unfair, and deceptive "Made in the USA" representations on the Products and Class Products, and within the description of the Products online.

87. Each time Plaintiff and putative Class members purchased a Class Product, they relied on Defendant's unqualified U.S. origin representations in their purchasing decisions, as is typical of most U.S. consumers.

88. Consequently, Plaintiff and other similarly situated consumers were deceived by Defendant's actions.

89. Plaintiff believed, at the time of purchase, that the Products were of superior quality and that they were supporting U.S. jobs, the U.S. economy, the environment, and ethical working conditions by purchasing a product made with U.S.-sourced ingredients, rather than ingredients sourced, grown, or made outside the United States.

90. Ingredients and components grown or manufactured in the USA are subject to strict regulatory requirements, including, but not limited to, agricultural, environmental, labor, safety, ethical, and quality standards.

91. Foreign sourced, grown, or manufactured ingredients and components are not subject to the same U.S. standards and may pose greater risks to consumers, the environment, and the U.S. economy.

92. This concern is especially significant for products intended for topical use, such as hair care products.

93. Additionally, foreign-sourced, grown, or manufactured ingredients and components are generally of lower quality and less reliable than their U.S. origin counterparts.

94. False, unqualified, unfair and deceptive representation that products are "Made in the USA" reduces overall customer satisfaction compared to if such products were genuinely made in the U.S. using ingredients and components sourced, grown, or made domestically.

95. Upon information and belief, the Class Products, including the Products purchased by Plaintiff, contain foreign ingredients and are not worth the purchase price paid by Plaintiff and putative Class members.

96. The precise amount of damages will be proven at the time of trial.

97. Plaintiff and Class members were harmed as a result of Defendant's false, unqualified, unfair and deceptive "Made in the USA" representations alleged herein.

98. Plaintiff wants to purchase the Class Products again, but he cannot be certain that they would not be misled again in the future unless and until Defendant makes appropriate changes to its Class Products' labeling and marketing as is requested herein.

99. This false, unfair, and deceptive advertising of the Class Products by Defendant presents an ongoing threat to consumers, as Defendant's conduct continues to this day.

## CLASS ALLEGATIONS

100. Plaintiff brings this action on behalf of themselves, and all others similarly situated.

101. Plaintiff Lauer is a member of and seeks to represent an Illinois Class, pursuant to Federal Rules of Civil Procedure, Rule 23(a) and 23(b)(3), defined as (the "Class"):

> All persons in Illinois who purchased one or more of the Class Products labeled "Made in the USA" or any derivative thereof on the product, packaging or product description, and that were made with or contained ingredients or components not grown or manufactured in the USA, within four years prior to the filing of this Complaint.

102. Excluded from the Class are Defendant's officers, directors, and employees; any entity in which Defendant have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Further excluded from the Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

103. Plaintiff reserves the right to modify the proposed Class definition, including but not limited to expanding the Class to protect additional individuals and to assert additional sub-classes as warranted by additional investigation.

104. <u>Numerosity</u>: The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of members of the Class is unknown to Plaintiff at this time, based on information and belief, the Class consists of thousands of individuals within Illinois.

105. <u>Commonality</u>: There are questions of law and fact common to the Class, which predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, without limitation:

a. The nature, scope, and operations of the wrongful practices of Defendant;

b. Whether Class Products are or have been represented as being of U.S. origin without clear and adequate qualification;

c. Whether Defendant negligently or intentionally misrepresented or omitted the fact that the Class Products, including the Products purchased by the Plaintiffs and other Class members, were sold illegally in Illinois;

d. Whether Defendant knew or should have known that its business practices were unfair, deceptive and/or unlawful;

e. Whether the conduct of Defendant violated the ICFA;

f. Whether Defendant was unjustly enriched by its unlawful, unfair and deceptive business practices; and,

g. Whether Plaintiff and members of the Class suffered monetary damages as a result of Defendant's conduct and, if so, the appropriate amount of damages.

106. Typicality: Plaintiff's claims are typical of those of the Class. Plaintiff and all members of the Class have been injured by the same wrongful practices of Defendant. Plaintiff's claims arise from the same course of conduct that gave rise to the claims of the Class and are based on the same legal theories in that Plaintiff purchased one or more Class Products from Defendant that were represented and/or advertised as being "Made in the USA," or any derivative thereof, without clear and adequate qualification.

107. Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of members of the Class. Plaintiff's Counsel are competent and experienced in litigating consumer class actions. Plaintiff has retained counsel experienced in consumer protection law, including complex class action litigation involving unfair business practices. Plaintiff has no adverse or antagonistic interests to those of the Class and will fairly and adequately protect the interests of the Class. Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and the proposed Class.

108. Predominance: Defendant has engaged in a common course of conduct toward Plaintiff and members of the Class, in that Plaintiff and members of the Class were induced to purchase the Class Products.

109. The common issues arising from Defendant's conduct affecting members of the Class set out above predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

110. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most members of the Class would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy.

111. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

112. Unless the Class is certified, Defendant will retain monies received as a result of Defendant's unlawful, unfair and deceptive conduct alleged herein.

113. Defendant has acted on grounds that apply generally to the Class, so that Class certification is appropriate.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Violations of Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1, *et seq*.**

114. Plaintiff Lauer re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

115. Pursuant to the Illinois Consumer Fraud Act (815 ILCS 505/1, *et seq*.), it is unlawful for any person, including a corporation, to engage in deceptive or unfair acts or practices in the conduct of any trade or commerce.

116. Under the Consumer Fraud Act:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. **In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act.** (emphasis added).

117. Thus, to determine whether the Class Products may be lawfully labeled and advertised with the unqualified statement of origin claim, such as "Made in the USA," Illinois law requires a court to look to federal law under the Federal Trade Commission Act, including the regulations (such as the MUSA Rule) and decisions of the Federal Trade Commission.

118. As alleged herein, Defendants has engaged in unfair and deceptive acts or practices in violation of the Illinois Consumer Fraud Act (and the MUSA Rule) by representing that the Class Products are "Made in the USA" without clear and adequate qualification, despite containing ingredients and/or components that are sourced, grown, or manufactured in foreign countries.

119. Additionally, the deceptive or unfair practice occurred in the course of conduct involving trade or commerce as it involved the sale of goods to consumers.

120. Defendant intended for Plaintiff Lauer and the Illinois Class to rely on these representations, including because product descriptions and labels claiming that the Class Products were "Made in USA" were approved and disseminated by Defendant and its agents as a result of Defendant's actions. Defendant unequivocally holds the Class Products out as being "Made in the

USA", without qualification, in order to induce consumers into purchasing the Class Products and/or paying a premium for the Class Products.

121. As a direct and proximate result of Defendant's deceptive and unfair acts, Plaintiff Lauer and the Illinois Class have suffered actual damage in the form of monies paid because: (a) they would not have purchased the Class Products on the same terms absent Defendant's unlawful, unfair and deceptive conduct as set forth herein; (b) they paid a price premium for the Class Products or chose them over competing products due to Defendant's misrepresentations and deceptive packaging, which falsely claimed the products were "Made in the USA," without qualification; and (c) the Class Products contained foreign ingredients and components that were not properly disclosed. Simply put, but for Defendant's deceptive and unfair acts in labeling and holding out the Class Products (including in their online product descriptions) to be "Made in the USA", Plaintiff Lauer and the Illinois Class would not have purchased the Class Products.

122. Plaintiff Lauer and the Illinois Class request that the Court enter judgment against Defendant for actual damages, punitive damages, attorneys' fees, and costs, as well as any other relief the Court deems just and proper under 815 ILCS 505/10a(c).

## SECOND CAUSE OF ACTION
**Unjust Enrichment**

123. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further allege as follows:

124. Plaintiff pleads this unjust enrichment cause of action in the alternative to any contract-based claims.

125. The elements of unjust enrichment are the receipt of a benefit and the unjust retention of that benefit at the expense of another.

126. Plaintiff and members of the Class conferred non-gratuitous benefits upon Defendant by purchasing the Class Products, which Defendant represented as made in the USA, without any qualification regarding the foreign ingredients contained therein.

127. Plaintiff and members of the Class allege that Defendant owes them money for the unjust conduct described herein that resulted in the wrongful acquisition of funds.

128. An undue advantage was taken of Plaintiff's and the Class's lack of knowledge of the deception, resulting in money being extracted to which Defendant had no legal right.

129. Defendant is therefore indebted to Plaintiff and members of the Class in a specific sum—the amount of money each paid for the Class Products, which Defendant should not retain in equity and good conscience.

130. Defendant is therefore liable to Plaintiff and members of the Class for the amount of unjust enrichment.

131. Defendant's retention of any benefit, whether directly or indirectly collected from Plaintiff and members of the Class, violates principles of justice, equity, and good conscience.

132. As a result, Defendant has been and continues to be unjustly enriched.

133. Plaintiff and the Class are entitled to recover from Defendant all amounts that Defendant has wrongfully and improperly obtained, and Defendant should be required to disgorge to Plaintiff and members of the Class the benefits it has unjustly received.

134. Defendant accepted and retained such benefits with knowledge that Plaintiff's and members of the Class's rights were being violated for financial gain. Defendant has been unjustly enriched by retaining the revenues and profits obtained from Plaintiff and members of the Class, and such retention under these circumstances is both unjust and inequitable.

135. As a direct and proximate result of Defendant's unlawful practices and the retention of monies paid by Plaintiff and members of the Class, Plaintiff and the Class have suffered concrete harm and injury. Defendant's retention of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class would be unjust and inequitable.

136. Plaintiff and members of the Class are entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendant, in a manner to be determined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against Defendant as follows, seeking equitable relief in the alternative to legal relief:

- Class certification of this action;
- Appointment of Plaintiff as Class Representatives;
- Appointment of Plaintiff's attorneys as Class Counsel;
- That Defendant's wrongful conduct alleged herein be adjudged and decreed to violate the consumer protection statutes asserted herein;
- An Order declaring Defendant's conduct violated the ICFA, 815 Ill. Comp. Stat. 505/1, *et seq*., and awarding actual damages and punitive damages;
- An Order requiring Defendant to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;
- An Order requiring the imposition of a constructive trust and/or disgorgement of Defendant's ill-gotten gains, compelling Defendant to pay restitution to Plaintiff and all members of the Class, and to restore to Plaintiff and Class members all funds acquired

through any act or practice declared by this Court to be unlawful, fraudulent, unfair, or deceptive, in violation of laws, statutes, or regulations, or constituting unfair competition;

- For pre and post-judgment interest on all amounts awarded;
- Actual damages under 815 ILCS 505/10a(c);
- Punitive damages, including under 815 ILCS 505/10a(c);
- That Plaintiff and each of the other members of the Class recover their costs of suit, including reasonable attorneys' fees and expenses pursuant to, *inter alia*, 815 ILCS 505/10a(c) and;
- That Plaintiff and the members of the Class be granted any other relief the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

137. Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: January 9, 2026

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: _/s/ *Abbas Kazerounian*___

Abbas Kazerounian, Esq.
(IL Bar # 6316129)
ak@kazlg.com
Pamela E. Prescott, Esq.
(*pro hac vice*)
pamela@kazlg.com
245 Fischer Avenue Ste. D1
Costa Mesa, California 92626-4539
*ATTORNEYS FOR PLAINTIFF*